**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| AMOS CORTES, ) | |
| ) | CASE NO.    1:11-CV-1910 |
| Plaintiff, ) | |
| ) | |
| v. ) | MAGISTRATE JUDGE GREG WHITE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | **MEMORANDUM OPINION & ORDER** |
| ) | |
| Defendant. ) | |

Plaintiff Amos Cortes ("Cortes ") challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Cortes's claim for a Period of Disability ("POD"), Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Title II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, 1381 *et seq*.  This matter is before the Court pursuant to 42 U.S.C. § 405(g) and the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the final decision of the Commissioner is VACATED and the case is REMANDED for further proceedings consistent with this opinion.

**I. Procedural History**

On January 28, 2008, Cortes filed an application for POD, DIB, and SSI alleging a disability onset date of October 15, 2007. His application was denied both initially and upon reconsideration. Cortes timely requested an administrative hearing.

On March 18, 2010, an Administrative Law Judge ("ALJ") held a hearing during which Cortes, represented by counsel, and an impartial vocational expert ("VE") testified. On April 12, 2010, the ALJ found Cortes was able to perform a significant number of jobs in the national economy and, therefore, was not disabled. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied further review.

**II. Evidence**

*Personal and Vocational Evidence*

Age thirty-five (35) at the time of his administrative hearing, Cortes is a "younger" person under social security regulations. *See* 20 C.F.R. §§ 404.1563(c) and 416.963(c). He has a high school education and past relevant work as a press operator and a clerical worker. (Tr. 23.)

*Relevant Medical History*[1]

In May 2008, David Williams, Ph.D., a non-examining, state agency psychologist, reviewed Cortes's medical file and determined that there were no medically determinable mental impairments at that time. (Tr. 288.) Dr. Williams checked one box and wrote a short paragraph of his impressions on the Psychiatric Review Technique form. (Tr. 288-301.) His impression

---

[1] As neither party raises contentions with respect to the physical limitations contained in Cortes's medical records or medical opinions, the Court will not summarize those records or opinions and will focus on the mental assessments.

was stated as the following:

> cl did not allege any psy impairment on the original app. no abnormal mental status. no tx by mhp. no psy meds. mer does not document the presence of a psy disorder nor is there any limitation of function suggestive of psy disorder. nmdi.

(Tr. 300.)

In October 2008, Richard Halas, M.A., a consultative examining, state agency psychologist, met with Cortes who underwent a psychological assessment. (Tr. 354-58.) Cortes was tearful during the appointment, but cooperative and appropriately motivated. (Tr. 354.) Mr. Halas diagnosed Cortes with depressive and anxiety disorders and psycho-social stressors from unemployment, financial, and health concerns, dependency on his mother, and separation from his family. (Tr. 357.) He opined that Cortes's ability to relate to others was moderately impaired and his ability to carry out one and two step instructions was mildly impaired. (Tr. 358.) In addition, he stated the following:

> the client's mental ability to withstand the stresses and pressures associated with most day-to-day work settings is assessed as having marked impairment. The client's emotional problems are likely to become quickly exacerbated under the pressures of a normal work setting.

*Id.*

In November 2008, Steven Meyer, Ph.D., a non-examining, state agency psychologist, reviewed Cortes's medical records and diagnosed depression and anxiety. (Tr. 362, 364.) Dr. Meyer found that Cortes has at least eight moderate limitations including: concentration, persistence, and pace; maintaining attention and concentration for extended periods; completing a normal day and week of work without interruption from psychological symptoms; and, performing at a consistence pace without unreasonable breaks. (Tr. 369-74.) Ultimately, he opined that Cortes was capable of simple and moderately complex routine work, in a setting with

3

regular expectations, occasional intermittent interactions with others, and few changes.  (Tr. 375.)

In December 2008, Cortes was assessed at Signature Health by a social worker and met the criteria for a mood disorder.  (Tr. 550.)  At that time, Cortes began counseling with Bob Hansen, M.Ed.  (Tr. 549-550.)  A month later, on January 8, 2009, Cortes met with Samar El-Sayegh, M.D., a psychiatrist, for an evaluation.  Dr. Sayegh diagnosed major depressive disorder, moderate and recurrent, with anxiety features.  (Tr. 567-68.)  He recommended therapy, and prescribed Zoloft.  *Id*.

In March 2010, Dr. Sayegh, the treating psychiatrist, provided an opinion on Cortes's mental limitations.  (Tr. 552-53.)  Dr. Sayegh found Cortes to be moderately impaired in relating to others; daily activities and socialization; responding appropriately to supervision, coworkers, and customary work pressures; and, performing complex, repetitive, or varied tasks.  *Id*.  He found Cortes to be markedly impaired in maintaining concentration and attention for extended periods; performing on schedule, maintaining attendance, and being punctual; and, responding appropriately to changes in the work setting.  *Id.*  Additionally, Cortes had mild limitations in sustaining a routine without special supervision; understanding, carrying out, and remembering instructions; using good judgment; and, behaving in an emotionally stable manner.  *Id*.  His condition would likely deteriorate under the stress of a job and would cause him to miss work more than three times a month.  (Tr. 553.)

### *Hearing Testimony*

At the hearing, Cortes testified as follows:

- He is thirty-five (35) years old, and lives with his mother.  (Tr. 35.)

- He graduated from high school.  (Tr. 35-36.)  Depending on his concentration, he can sometimes read, write, and do basic math.  *Id.*

- He has a driver's license, but had not driven for the previous five months due to dizziness, blackouts, and leg numbness.  (Tr. 36.)

- He receives $115 in income and food stamps from the state.  (Tr. 36.)  He has not received workers' compensation.  (Tr. 36-37.)

- He worked at Purdue Industry until he had a heart attack in September 2007. (Tr. 37.)  At Purdue, he was a tow motor driver, heavy lift operator, and supervisor of shipping and receiving.  *Id.*  He supervised 9-10 employees.  *Id.*  He kept records and reports and used a computer.  (Tr. 38.)

- He worked for Myers Industries as an injection mold operator and material handler which required lifting between 75 and 80 pounds and walking up 40 to 50 steps.  (Tr. 38.)

- He worked for Cicogna Electric and Sign as a fabricator which required lifting sheet metal that weighed between 45 and 50 pounds.  (Tr. 38-39.)

- He worked for Molded Fiber Glass Company as a line loader, primer, topcoater, tow motor driver, heavy lift operator, and a press operator.  (Tr. 39.)

- At another job, he was a cylinder tank inspector which involved a lot of heavy lifting, pushing, tow motor driving, and operating a 50,000 pound jack crane.  (Tr. 39-40.)

- He worked for Sears and Roebuck in shipping and receiving.  (Tr. 40.)

- His typical morning begins with spending twenty minutes in bed trying to get his body to start functioning and waiting for his leg numbness to go away. (Tr. 40.)  He "takes it easy" in the morning due to fatigue.  *Id.*  Sometimes his mother has to make him breakfast or bring him his clothes.  *Id.*  In the afternoon, his mother makes him lunch and he takes his medication. (Tr. 40.)  His medication makes him fatigued and short of breath so he "lay[s] down for about an hour [or an] hour and a half."  (Tr. 40-41.)  He wakes up approximately two or three hours later, eats dinner, and then tries to rest some more.  (Tr. 41.)

- He can accompany his mother on short trips to appointments or for shopping, but he can only help her lift about 10 pounds.  (Tr. 41-42.)

- He attends church services on Tuesdays, Fridays, Saturdays, and Sundays. (Tr. 42.) He does not socialize much more than church. *Id.* He likes to read the Bible and other books and to work on crossword puzzles. *Id.*

- He has to kneel down in the shower sometimes when he feels dizzy. (Tr. 42-43.)

- He moved to Ohio from Georgia after he and his wife separated to be closer to his family because he needed assistance with his medical condition. (Tr. 44-45.)

- His dizziness is the same intensity as it was when he first had the heart attack. (Tr. 46.) Over the past three months, the dizziness had become more frequent and could last as long as thirty minutes. (Tr. 47.)

- He is no longer able to play instruments in church because he has lost coordination, rhythm, and concentration. (Tr. 47-48.)

- At church, he gets dizzy and manages it by grabbing onto the benches in front of him or sitting down. (Tr. 48.) He has to alternate between sitting and standing at different intervals. (Tr. 49.) His pastor allows him to lie down in a private room on bad days. (Tr. 50.)

- His doctors limited him to lifting no more than 10 lbs., but he did not think he could lift that weight continuously all day. (Tr. 51.)

- He has tingling in his fingers and toes, numbness in his legs, back problems, concentration problems, trouble with his vision, depression, and anxiety. (Tr. 51, 53-54.)

- He feels that he could not do a "sitting-down type job" because it would cause problems with his legs and he has trouble concentrating for longer than 25 minutes. (Tr. 50.)

- He has a defibrillator which helps "a little bit." (Tr. 52.) His defibrillator works to correct his heart and this can happen when he gets especially dizzy at times of exertion, such as carrying ten pounds up two flights of steps or during anxiety attacks. (Tr. 52-53.)

The ALJ posed the following hypothetical question to the VE:

I want you to assume you're dealing with an individual who is 35 years of age, has a high school education, and past work experience as described in the record.

6

> The first hypothetical I want you to assume that this individual is capable of light exertion as defined by Social Security regulations with additional limitations this individual would be limited to performing simple, repetitive tasks. Would there be any jobs?

(Tr. 57.) The VE testified that there were jobs in the regional or national economy that such an individual could perform. *Id.* The VE gave the following examples for unskilled, light, and sedentary: office helper, cashier, unskilled office clerk, or order clerk. *Id.* The VE testified that the hypothetical individual would be unemployable if he had limitations and abilities as described by Cortes in his testimony, if he was additionally limited by an inability to do even low-stress work, if he was absent more than four times a month, or, if he required unscheduled work breaks in the afternoon for over an hour. (Tr. 58-59.)

### III. Standard for Disability

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).[2]

---

[2] The entire process entails a five-step analysis as follows: First, the claimant must not be engaged in "substantial gainful activity." Second, the claimant must suffer from a "severe impairment." A "severe impairment" is one which "significantly limits ... physical or mental ability to do basic work activities." Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets a required listing under 20 C.F.R. § 404, Subpt. P, App. 1, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000). Fourth, if the claimant's impairment does not prevent the performance of past relevant work, the claimant is not disabled. For the fifth and final step, even though the claimant's impairment does prevent performance of past relevant work, if other work exists in the national economy that can be performed, the claimant is not disabled. *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

Cortes was insured on his alleged disability onset date, October 15, 2007 and remained insured through December 31, 2012. (Tr. 16.) Therefore, in order to be entitled to POD and DIB, Cortes must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen,* 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

A claimant may also be entitled to receive SSI benefits when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). To receive SSI benefits, a claimant must meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

### IV. Summary of Commissioner's Decision

The ALJ found Cortes established medically determinable, severe impairments, due to cardiomyopathy, congestive heart failure, and depression; however, his impairments, either singularly or in combination, did not meet or equal one listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 18.) Cortes was found incapable of performing his past work activities, but was determined to have a Residual Functional Capacity ("RFC") for a limited range of light work. (Tr. 20, 23.) The ALJ then used the Medical Vocational Guidelines ("the grid") as a framework and VE testimony to determine that Cortes is not disabled.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.  *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied.

Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations or failure to provide the reviewing court with a sufficient basis to determine that the Commissioner applied the correct legal standards are grounds for reversal where such failure prejudices a claimant on the merits or deprives a claimant of a substantial right. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

## VI. Analysis

### *Residual Functional Capacity*

Cortes argues that the RFC was not supported by substantial evidence, because it did not accommodate the actual degree of his restrictions. (ECF No. 16 at 15-16; ECF No. 21 at 2-3.) Specifically, Cortes argues that the ALJ found Cortes moderately limited in his ability to maintain concentration, persistence, and pace, at Step 3, yet the RFC failed to accommodate those limitations. *Id*.

The ALJ assessed Cortes's RFC as follows:

[T]he claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The claimant can perform jobs that require only simple, repetitive tasks.

(Tr. 20.) The ALJ specifically noted that he accommodated Cortes's depression by limiting him to simple, repetitive tasks. (Tr. 23.) During the hearing, the ALJ's hypothetical question to the VE stated, in relevant part, "assume that this individual is capable of light exertion . . . [and] limited to performing simple, repetitive tasks." (Tr. 57.) Cortes argues that the restriction to simple, repetitive tasks, was inadequate as it does not fully and accurately convey the moderate limitations in his ability to maintain concentration, persistence, and pace. (ECF No. 16 at 15,

10

*citing* Tr. 19, 20.)

In support of his argument, Cortes cites a Sixth Circuit decision in which the court specifically addressed a situation where an ALJ failed to incorporate a limitation for moderate concentration, persistence, and pace into the hypothetical question posed to the VE. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010). The *Ealy* court found that "[i]n order for [VE's] testimony in response to hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." 594 F.3d at 516. In *Ealy*, the ALJ, in reliance on a state agency physician, found that the claimant had moderate difficulties with regard to concentration, persistence, or pace. *Id*. at 510. The state agency physician limited the claimant's "ability to sustain attention to complete simple repetitive tasks to 'two-hour segments over an eight-hour day where speed was not critical.'" *Id*. at 516. The ALJ merely informed the VE that the claimant was limited to simple, repetitive tasks and instructions. *Id*. at 516-17. The *Ealy* court concluded that the VE did not receive a fair summary of the claimant's limitations because the hypothetical failed to include Ealy's time and speed restrictions. *Id*. at 517. Because the hypothetical was inaccurate, the *Ealy* court concluded that the VE's testimony did not constitute substantial evidence.³ *Id*.

In the case at bar, the ALJ's hypothetical, as in *Ealy*, fails to include any limitations

---

³ Curiously, the Commissioner's brief fails to explain how the ALJ's decision is tenable in light of the *Ealy* decision. Instead, the Commissioner relies on an older Sixth Circuit decision – *Smith v. Halter*, 307 F.3d 377 (6th Cir. 2001). (ECF No. 19 at 9-10.) The *Smith* decision is clearly distinguishable. Therein, the ALJ "relied on the testimony of four physicians who characterized Smith's concentration problems as minimal or negligible." *Id.* at 379. The difference is significant because, herein, the ALJ's own finding dictates that Cortes had moderate limitations in persistence, concentration, and pace. Though the ALJ was not required to find such limitations existed, once he does so, he must account for them in the RFC.

11

concerning pace despite the ALJ's finding that Cortes was moderately limited in this regard. In addition, a limitation to simple, repetitive tasks fails to properly account for Cortes's moderate deficiency in concentration. *See, e.g., McNemar v. Astrue*, No. 1:10-CV-2079, 2011 U.S. Dist. LEXIS 131861 at *23 (N.D. Ohio, Aug. 29, 2011) ("Case law from this district and the Sixth Circuit suggests that the ALJ's hypothetical question or RFC must state something more than merely a limitation to simple, repetitive, and routine work in order to properly account for a plaintiff's moderate deficiency in concentration.") (*citing Candela v. Astrue*, No. 1:10-CV-1603, 2011 U.S. Dist. LEXIS 82410 (N.D. Ohio, July 28, 2011)); *Anderson v. Comm'r of Social Sec.,* 2011 U.S. Dist. LEXIS 9056 at fn. 6 (S.D. Ohio, Jan. 4, 2011); *Whack v. Astrue*, 2008 U.S. Dist. LEXIS 14083 (E.D. Pa., Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where the claimant has moderate deficiencies in concentration, persistence or pace).

At Step Five, an ALJ must determine whether a claimant's RFC will allow him to perform a significant number of jobs in the national economy. *See* 20 C.F.R. §§ 404.1520(g) and 416.920(g); *Jones v. Comm'r of Soc. Sec.,* 363 F.3d 469, 474 (6th Cir. 2003). The Commissioner satisfies this burden by showing "substantial evidence that a claimant has the vocational qualifications to perform specific jobs[.]" *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978); *see also, Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (*citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir.1984) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual

physical and mental impairments.'")).

The Court cannot find that the VE's testimony provides substantial evidence to carry the Commissioner's burden at Step Five. *See also, Frederick v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 42904 (E.D. Mich., Mar. 25, 2011) ("The failure to account for concentrational deficiencies constitutes reversible error."); *Herriman v. Apfel*, 2000 U.S. Dist. LEXIS 2177 (E.D. Mich., Feb. 11, 2000) (remanding case where ALJ's hypothetical failed to account for claimant's concentration deficiencies). In *Frederick*, the District Court for Eastern Michigan explained "[t]he fact that a job is simple and unskilled has nothing to do with whether or to what degree a worker's moderate concentrational deficiencies will affect the timely completion of that job, and indeed, courts have found such descriptions insufficient to address deficiencies." 2011 U.S. Dist. LEXIS 42904 (*citing Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996)).

Because the ALJ gives no indication that he incorporated Cortes's moderate mental limitations into the hypothetical or the RFC analysis, the Court finds that the ALJ's determination is not supported by substantial evidence. The ALJ rejected the factual basis for any of the alternatives presented to the VE, only incorporating the first hypothetical into his final RFC determination.[4] Cortes's first assignment of error is well-taken.

***Opinion Evidence of Record***

Cortes also argues that the ALJ "declined to give much weight to *any* of the medical opinions of record – whether from treating sources, consultative examiners, or State agency

---

[4] Specifically, the VE testified that a hypothetical individual with additional limitations as those described in the testimony of Cortes, limited by an inability to do even low-stress work, limited by a tendency to be absent more than four times a month, or limited by a need to take unscheduled work breaks in the afternoon for over an hour would be unemployable. (Tr. 57-59.)

13

reviewers – because he believed the conclusions therein were inconsistent with objective evidence, Cortes's conservative treatment, and his daily activities." (ECF No. 16 at 16, *citing* Tr. 22.)

The ALJ's opinion could be construed as not accepting any of the opinions of the medical sources. It is well established that ALJs are not trained medical experts and may not substitute their own opinion for that of a medical professional. *See, e.g., Meece v. Barnhart*, 192 Fed. App'x. 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.") (*citing McCain v. Dir., Office of Workers' Comp. Programs*, 58 Fed. App'x 184, 193 (6th Cir. 2003) (citation omitted)); *Pietrunti v. Director, Office of Workers' Comp. Programs, United States DOL*, 119 F.3d 1035, 1044 (2nd Cir. 1997); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("But judges, including [ALJs] of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.")); *accord Winning v. Comm'r of Soc. Sec.*, 661 F. Supp. 2d 807, 823-24 (N.D. Ohio 2009) ("Although the ALJ is charged with making credibility determinations, an ALJ 'does not have the expertise to make medical judgments.'"); *Stallworth v. Astrue*, 2009 WL 2271336 at *9 (S.D. Ohio, Feb. 10, 2009) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other evidence or authority in the record.") (*quoting Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000)).

Because the Court found that remand is necessary, the Court need not address whether the ALJ's discussion of the medical opinion evidence of record satisfies proper procedural standards. Nonetheless, upon remand, the ALJ should consider a more thorough analysis.

## VII. Decision

For the foregoing reasons, the Court finds the decision of the Commissioner not supported by substantial evidence. Accordingly, the decision of the Commissioner is VACATED and the case is REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this opinion.

IT IS SO ORDERED.

<u>/s/ Greg White</u>
U.S. Magistrate Judge

Date: September 13, 2012