**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **AMOS CORTES,** | ) | **CASE NO. 1:11CV1910** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **MAGISTRATE JUDGE GREG WHITE** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of** | ) | **MEMORANDUM OPINION & ORDER** |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

On August 7, 2014, Plaintiff Amos Cortes ("Plaintiff") filed a Motion for Attorney Fees pursuant to 42 U.S.C. § 406(b)(1).  (Doc. No. 27.)  The Acting Commissioner of Social Security ("Commissioner") filed a response indicating she does not oppose the motion.  (Doc. No. 29.) For the reasons set forth below, Plaintiff's Motion is GRANTED IN PART and DENIED IN PART.

**I.  Procedural History**

On September 13, 2012, this Court issued a Memorandum Opinion & Order vacating the final decision of the Commissioner and remanding for further proceedings consistent with 42 U.S.C. § 405(g).  (Doc. No. 22.)  The Commissioner did not appeal this ruling.

On December 12, 2012, Plaintiff filed a timely Motion for Attorney's Fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  (Doc. No. 24.)  On December 26,

2013, the Commissioner filed a response indicating she did not oppose the motion. (Doc. No. 25.) On January 3, 2013, the Court issued an Order awarding Plaintiff $2,105.92 in attorney fees pursuant to the EAJA.[1] (Doc. No. 26.)

Upon remand, the Social Security Administration determined Plaintiff was disabled as of October 15, 2007. (Doc. No. 27-11 at 1.) Based on the exhibits attached to Plaintiff's counsel's Motion, it appears that Plaintiff's ex-wife and two minor children received Notices of Awards of Benefits due to their status as dependents of a disabled person (i.e., Plaintiff). (Doc. Nos. 27-2, 27-3, 27-4.) According to the Notices of Award attached to Plaintiff's counsel's Motion, it appears the past due benefits awarded to Plaintiff and his family totaled $80, 640.00.[2] (Doc. Nos. 27-1 at 2; 27-2 at 2; 27-3 at 2; 27-4 at 2.)

## II. Law

Pursuant to 42 U.S.C. § 406(b):

(b) Fees for representation before court.

   (1) (A) Whenever a court renders a judgment favorable to a claimant under this title [42 USCS §§ 401 *et seq*.] who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Commissioner of Social Security may, notwithstanding the provisions of section 205(i) [42 USCS § 405(i)], but subject to subsection (d) of this section, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

   (B) For purposes of this paragraph--

      (i) the term "past-due benefits" excludes any benefits with respect to which payment has been continued pursuant to subsection (g) or (h) of section 223 [42 USCS § 423], and

---

[1] Plaintiff's counsel indicates that she received no EAJA fee, however, because the full $2,105.92 was offset to pay a pre-existing federal debt. (Doc. No. 27 at 4; Doc. No. 27-6.)

[2] Specifically, these Notices of Award indicate that Plaintiff and his family were awarded the following amounts in past-due benefits: (1) Plaintiff Amos Cortes was awarded $57,420.00; (2) Plaintiff's ex-wife Elizabeth Hernandez was awarded $5,732.00; (3) Plaintiff's minor child Y.C. was awarded $8,744; and, (4) Plaintiff's minor child E.C. was awarded $8,744.00. (Doc. Nos. 27-1 through 27-4.) The total of these past-due benefits awards is $80,640.00.

>> (ii) amounts of past-due benefits shall be determined before any applicable reduction under section 1127(a) [42 USCS § 1320a-6(a)].
>
> (2) Any attorney who charges, demands, receives, or collects for services rendered in connection with proceedings before a court to which paragraph (1) is applicable any amount in excess of that allowed by the court thereunder shall be guilty of a misdemeanor and upon conviction thereof shall be subject to a fine of not more than $ 500, or imprisonment for not more than one year, or both.

"Fees under § 406(b)(1)(A) are awarded from past-due benefits withheld from the claimant by the Commissioner." *Pendland v. Comm'r of Soc. Sec.*, 2011 WL 4891025 at * 1 (S.D. Ohio Sept. 21, 2011) (*citing Gisbrecht v. Barnhart*, 535 U.S. 789, 792, 122 S. Ct. 1817, 152 L. Ed. 2d 996 (2002)). "The Court may award fees only for work performed before the Court and not before the Social Security Administration." *Id*. (*citing Horenstein v. Sec'y of Health & Human Servs.*, 35 F.3d 261, 262 (6th Cir. 1994) (*en banc*)).

### III. Analysis

Here, the Social Security Administration ("SSA") withheld $14,355.00 "from [Plaintiff's] past due benefits in case we need to pay your lawyer." (Doc. No. 27-1 at 2.) In addition, the SSA withheld the following amounts from the past-due benefits awarded Plaintiff's ex-wife and minor children: (1) $1,433.00 from Ms. Hernandez's award; (2) $2,186.00 from Y.C.'s award; and, (3) $2,186.00 from E.C.'s award. (Doc. Nos. 27-2 at 2; 27-3 at 2; 27-4 at 2.) Thus, the aggregate amount of benefits withheld from Plaintiff and his family amounts to $20,160.00.

These withheld amounts represent approximately 25 percent of the total past-due benefits awarded to Plaintiff and his family.[3] While the SSA typically withholds 25% of the past-due

---

[3] In *Hopkins v. Cohen*, 390 U.S. 530, 88 S.Ct. 1146, 20 L.Ed.2d 87 (1968), the Supreme Court found that attorney fee awards under § 406(b) are to be calculated based upon the past-due benefits received by both the claimant and his dependent family members. In that case, the Court found no basis to distinguish between benefits received by the claimant and his dependent family members because "proof of the husband's 'claim' results in a package of benefits to his immediate family" and, therefore, "[i]n a realistic sense . . . the attorney was representing fully the interests of the wife and children when he litigated the question of the husband's disability." *Id*. at 534, fn 5. Thus, the calculation of the 25% fee ceiling is based on the total past-due benefits awarded to both Plaintiff Cortes and his dependent family members. However, as discussed *infra*, *Hopkins* does not prevent this Court from considering, as part of its windfall

3

benefits for payment of attorney fees, separate attorney fee awards are made under [§ 406(a) and] § 406(b) for work performed before the administrative agency and for work performed in the federal court." *Karadsheh v. Comm'r of Soc. Sec.*, 2011 WL 5041366 at * 2 (W.D. Mich. Sept. 26, 2011). Plaintiff's counsel, Paulette Balin, represents that (1) an attorney from her firm, Linda Pettit, performed a total of 5.1 hours of work; and, (2) paralegal Zachary Sunderman performed a total of 13.4 hours of work representing Plaintiff Cortes before this Court. (Doc. Nos. 27-7, 27-8.)

Plaintiff's counsel requests $6,741.37 in attorney fees to be paid from the amounts withheld from Plaintiff's and his family's past-due benefits, which constitutes 8.36% of the total past-due benefits award of $80,640.00. (Doc. No. 27.) With regard to the requested hourly rate, Plaintiff's counsel states that "[t]he fees requested herein are $850.00 (close to twice counsel's hourly fee of $385.00 and within the standard rate in this market) multiplied by 5.1 hours of work and $179.58 (twice paralegal Mr. Sunderman's established [rate] for work performed in 2012) multiplied [by] 13.4 hours of work in this case before this Court." *Id*. at 2.

The Commissioner filed a response indicating that "she will not be filing an objection to Plaintiff's Motion for Attorney Fees." (Doc. No. 29.)

The Court notes Plaintiff executed an "Attorney Fee Contract– Federal Court" on August 31, 2011 providing that:

1. I will pay no fee at all unless I win my case.

2. I agree that if Federal Court favorably decides my claim at the Federal Court level; or at the Appeals Council or ALJ hearing level after a decision by the Federal Court, I will pay my attorney a fee equal to 25 percent of all past-due benefits in my Social Security and/or SSI disability claims.

3. The "total past-due benefits" upon which 25 percent attorney fee is based include benefits paid to members of my family as the result of the Social Security Administration's approval of my disability claim, and also includes any Supplemental Security Income (SSI) benefits that I receive.

---

analysis, the fact that counsel performed no additional work before this Court with regard to Plaintiff Cortes' dependent family members. *See e.g. Woods v. Colvin*, 2014 WL 2918454 at * 6 (N.D. Ohio June 26, 2014); *Steward v. Astrue*, 2010 WL 2376241 at * 2 (S.D. Ohio June 9, 2010).

4

(Doc. No. 27-5.) The validity or timing of this agreement is not challenged.[4]

"When two parties enter into such an arm's length agreement, due deference should be given to this expression of the intentions of the parties. However under the special circumstances of court authorization of fees in social security cases, a court is not bound to award recovery according to the stated agreement." *Rodriquez v. Bowen*, 865 F.2d 739, 746 (6th Cir. 1989). This Court operates as an "independent check" on the reasonableness of such contingency arrangements. *Gisbrecht*, 535 U.S. at 807. There is "a rebuttable presumption that an attorney would receive the full 25% contingency fee under contract *unless* 1) the attorney engaged in improper conduct or was ineffective, or 2) the attorney would enjoy an undeserved windfall due to the client's large back pay award or the attorney's relatively minimal effort." *Hayes v. Sec'y of HHS*, 923 F.2d 418, 419 (6th Cir. 1990).

There is no indication of improper conduct herein and counsel was effective. As such, unless the amount requested constitutes a windfall, the Court will enforce the contingency agreement. As explained in the *Hayes* decision:

> We believe that, under *Rodriquez*, windfall can never occur when, in a case where a contingent fee contract exists, the hypothetical hourly rate determined by dividing the number of hours worked for the claimant into the amount of the fee permitted under the contract is less than twice the standard rate for such work in the relevant market. We believe that a multiplier of 2 is appropriate as a floor in light of indications that social security attorneys are successful in approximately 50% of the cases they file in the courts. Without a multiplier, a strict hourly rate limitation would insure that social security attorneys would not, averaged over many cases, be compensated adequately.

*Hayes*, 923 F.2d at 422; *accord Bailey v. Comm'r of Soc. Sec.*, 2012 WL 641538 at * 1 (N.D. Ohio Feb. 28, 2012) ("In the Sixth Circuit, below a floor of double the normal rate, an award can

---

[4] The Court notes that Plaintiff's ex-wife, Elizabeth Hernandez, did not sign this Fee Contract. It is dated August 31, 2011, at which time Plaintiff and Ms. Hernandez were apparently divorced. *See* Doc. Nos. 27-5; 27-2 at 1. Moreover, it is not clear that Plaintiff had legal custody of his minor children, Y.C. and E.C., at the time the fee contract was executed. Indeed, at the time the Notices of Award were mailed, the minor children appear to have lived in Belmond, Iowa with their mother. (Doc. Nos. 27-3, 27-4.) Nor is it clear that Plaintiff's counsel has apprised Ms. Hernandez (or Plaintiff for that matter) of the instant motion. However, as it is not material to this Court's decision, the Court will not consider whether these facts affect the validity of the fee contract in this case.

never be a windfall.") Here, Plaintiff's counsel states she is seeking an award that translates into a hypothetical hourly rate of $850.00 with respect to attorney Pettit's work, and $179.58 with respect to Mr. Sunderman's work. Although the Commissioner raises no objection, this Court must determine whether the requested fee (and the hourly rates upon which it is based) is reasonable. *See Cabrera v. Comm'r of Soc. Sec.*, 2011 WL 4360019 (S.D. Ohio Sept. 19, 2011) ("[E]ven in a case where the government has filed no response to the fee petition, [d]espite the absence of an objection . . . a District Court must review each case to determine the amount of a reasonable fee, and clearly state the basis for its determination") (internal quotations omitted); *Marion v. Comm'r of Soc. Sec.*, 2013 WL 5718753 at * 2 (N.D. Ohio Oct. 18, 2013).

### A. Hourly Rates

With respect to paralegal Sunderman, Plaintiff's counsel requests an hourly rate of $179.58 (double his 2012 rate of $89.79 per hour). Plaintiff's counsel states Mr. Sunderman performed a total of 13.4 hours of work on Plaintiff's case, consisting of conducting legal research and providing initial drafts of Plaintiff's Brief on the Merits and Reply Brief. Plaintiff's counsel maintains Mr. Sunderman's requested rate is less than prevailing market rates for paralegals, and supports this assertion with a survey published by The National Association of Legal Assistants indicating that billing rates for paralegals in this region were $101.00 in 2008, $111.00 in 2010, and $123.00 in 2012. (Doc. No. 27-14.)

The Court notes that Mr. Sunderman's work on Plaintiff's case resulted in a significant reduction of the overall fees requested, as his requested hourly rate is far less than that of attorney Pettit. Overall, then, Mr. Sunderman's efforts likely inured to the benefit of Plaintiff, in terms of the amount of the requested § 406(b) fee award. The Court further notes that the hourly rate requested for Mr. Sunderman's paralegal work has been accepted by at least one court in this District in the context of an EAJA award. *See Hawk v. Astrue*, 2013 WL 139799 at * 4-5 (N.D. Ohio Jan. 10, 2013). Accordingly, in light of the substantive nature of the work performed by Mr. Sunderman and the evidence presented indicating his requested rate is reasonable given the standard market rate for paralegal services in this area, the Court finds a total hourly rate of

6

$179.59 (i.e. double $89.79) is appropriate under the circumstances.[5]

With respect to attorney Pettit, however, the requested hypothetical hourly rate of $850 is well above the range of reasonable hourly rates typically approved in this District. Most courts in this District have previously determined that an hourly rate of up to $350 is an appropriate upper limit in awarding attorney fees pursuant to § 406(b). *See e.g. Lucky v. Colvin,* 2014 WL 3748930 at * 3 (N.D. Ohio July 29, 2014); *Koprowski v. Comm'r of Soc. Sec.*, 2013 WL 29804 at * 2 (N.D. Ohio Jan. 2, 2013); *Papaleo v. Colvin,* 2013 WL 3940794 at * 3 (N.D. Ohio July 30, 2013); *Brown v. Comm'r*, 2012 WL 6682112 at * 3 (N.D. Ohio Dec. 21, 2012); *Arnold v. Astrue*, 2011 WL 307969 at * 2 (N.D. Ohio Jan. 11, 2011). In *May v. Comm'r of Soc. Sec.*, 2013 WL 162293 (N.D.Ohio Jan.14, 2013), counsel requested a doubled hourly rate of $545.44, explaining that her usual hourly rate was $272.72. Judge Adams observed as follows:

> This Court has recently reviewed the issue of a reasonable hourly rate and concluded that upon consideration of all that is known to the Court about this area of law, the geographic region in which it is practiced, and the individuals routinely engaged in its practice, the Court finds that a total reasonable hourly rate is $175, doubled under the windfall analysis to $350 per hour. This latter figure places the relevant market rate directly in line with the median hourly rate that the Court sees employed in a broad spectrum of civil litigation.

*Id.; see also Brown v. Comm'r of Soc. Sec.*, 2012 WL 6682112 (N.D. Ohio Dec.21, 2012) (M.J. Vecchiarelli) ("The proper measure is whether the fee is less than twice the standard rate for such work in the relevant market. While plaintiff's counsel asserts that a $200 per hour fee is the standard rate in the Cleveland market, she offers no evidence to support that assertion.")

Recently, in *Marion v. Comm'r of Soc. Sec.*, 2013 WL 5718753 (N.D. Ohio October 18, 2013), this Court analyzed hourly rates requested in EAJA applications in an effort to assess the relevant market rate for attorney fee awards under § 406(b). Based on that review, the Court found the prevailing rate in the community to be $176.95 per hour. *Id.* at * 3. In that case, the

---

[5] In the context of analyzing EAJA applications, the Court has limited the hourly rate for certain work performed by legal assistants to $40 per hour. *See e.g. Dallas v. Comm'r of Soc. Sec.*, 2014 WL 1767815 at * 5-6 (N.D. Ohio May 2, 2014). There, however, Plaintiff's counsel failed to submit any evidence supporting a greater hourly rate. Moreover, the work performed by Mr. Sunderman herein is of a more substantive nature than that performed by the legal assistant in *Dallas*.

7

Court found that "[a]s double the normal market rate does not constitute a windfall, . . . a § 406(b) fee award at an hourly rate of $353.90 per hour is reasonable." *Id*.

Here, Plaintiff's counsel submits evidence which she believes supports a higher hourly rate. Specifically, Plaintiff's counsel directs this Court's attention to the following: (1) an attorney fee survey conducted in 2010 and 2011 in the area of consumer law which found that Ohio attorneys with sixteen to twenty years of experience have an average hourly rate of $323.00 per hour; (2) an affidavit from case manager Sabrina Veal stating she has prepared fee petitions for attorneys in Ms. Pettit's law firm in the past and that, over the past two years, these petitions requested an hourly fee of between $350 and $385; and, (3) an affidavit from social security practitioner Louise Mosher indicating that, "as a 38 year practitioner, the value of my current hourly rate is $350.00 per hour." (Doc. Nos. 27-12, 27-13.) Because Ms. Pettit has 37 years of experience, Plaintiff's counsel indicates this Court should accept her hourly rate as $425.00 (i.e. half of the requested $850.00 hypothetical hourly rate).

The Court rejects this argument for several reasons. As an initial matter, Plaintiff's counsel points to no evidence suggesting that hourly rates for consumer lawyers bears any relevance to rates for social security disability lawyers. Moreover, while other lawyers in Ms. Pettit's law firm may have requested hourly fees of between $350 and $385, Plaintiff's counsel cites no evidence that any attorney from her firm has ever actually billed a client at this rate. *See Thatch v. Comm'r of Soc. Sec*., 2012 WL 2885432 at * 4 (N.D. Ohio July 13, 2012) (noting that "it has been the Court's experience that these matters are almost universally performed under contingent fee agreements. Thus, it is somewhat unclear how [plaintiff's counsel] arrives at even her own hourly rate because there is nothing in the record to suggest she has ever *actively* billed a social security client at that rate") (emphasis in original). The same holds true with respect to Ms. Mosher, who avers only that she believes the "value" of her hourly rate is $350, not that she has ever actually billed a social security client that amount. Thus, the Court finds the evidence submitted by Plaintiff's counsel is insufficient to demonstrate the standard market rate for social security disability lawyers in this region.

Moreover, even if the Court were to accept the evidence submitted in support of

8

Plaintiff's motion, it would not support Plaintiff's counsel's requested hourly rate of $425.00, which doubles to a total hypothetical hourly rate of $850.00. At best, the evidence submitted by Plaintiff's counsel would suggest an standard hourly rate of $385.00. Plaintiff's counsel's requested rate of $850.00 is more than twice that amount. Thus, even if the Court were to credit the evidence submitted in support of Plaintiff's counsel's motion, that evidence does not support the argument that the requested § 406(b) award is *per se* reasonable under *Hayes, supra*.

Accordingly, this Court must consider whether Plaintiff's counsel's request represents a windfall.

### B. Windfall

In *Hayes*, the Sixth Circuit explained the factors that district courts may consider in analyzing § 406(b) fee requests where the requested hourly rate is more than twice the standard market rate:

> If the calculated hourly rate is above this floor, then the court may consider arguments designed to rebut the presumed reasonableness of the attorney's fee. Such arguments may include, without limitation, a consideration of what proportion of the hours worked constituted attorney time as opposed to clerical or paralegal time and the degree of difficulty of the case. Factors such as these should inform the district court's determination of whether the attorney would "enjoy a windfall because of ... minimal effort expended." *Rodriquez*, 865 F.2d at 746.

*Hayes,* 923 F.2d at 422.

For the following reasons, the Court finds a fee award of $6,741.37 would constitute a windfall in this case. First, the record reflects that attorney Pettit expended relatively little effort in this matter (5.1 hours), particularly as compared to the significantly greater time expended by paralegal Sunderman (13.4 hours). Moreover, while counsel was ultimately successful in litigating Plaintiff's case before this Court, the legal issues raised were not particularly complicated (e.g., the treating physician rule and whether the RFC was supported by substantial evidence). Indeed, the entirety of Plaintiff's legal argument in his Brief on the Merits and Reply Brief, combined, was ten pages long. (Doc. No. 16 at 15-20, Doc. No. 21 at 1-5.)

Further, the Court notes that a portion of the money withheld by the SSA for attorney fees came from benefits paid to Plaintiff's ex-wife and minor children. Plaintiff's counsel correctly

9

notes that the Supreme Court's decision in *Hopkins v. Cohen*, 390 U.S. 530, 88 S.Ct. 1146, 20 L.Ed.2d 87 (1968) instructs that the 25% fee "ceiling" should be calculated based on the total past-due benefits awarded to both Plaintiff Cortes and his dependent family members. (Doc. No. 30.) However, that decision does not prevent the Court from considering, as part of its windfall analysis, the fact that Plaintiff's counsel performed no additional work in this Court on behalf on Plaintiff's family members. Indeed, several other courts have considered this as a factor weighing in favor of reducing § 406(b) awards. *See e.g. Woods v. Colvin*, 2014 WL 2918454 at * 6 (N.D. Ohio June 26, 2014) ("The record reflects that Counsel did not represent Plaintiff's children before this Court, as Counsel's brief addressed only Plaintiff's proceedings and arguments. Accordingly, this factor weighs in favor of reducing the fees awarded to Counsel"); *Steward v. Astrue*, 2010 WL 2376241 at * 2 (S.D. Ohio June 9, 2010)(noting that "the full amount requested, which includes a percentage of the amount recovered by Plaintiff's children, would be a windfall to [Counsel] given that no additional work was required, nor was any additional risk taken, to secure benefits for Plaintiff's children as they are derivative of Plaintiff's claim").

Plaintiff's counsel, however, argues this Court should not reduce the award on this basis because Cortes signed a contingency fee agreement that "explicitly contemplated" that an award of attorney fees would be calculated based on the past-due benefits paid to his dependent family members. (Doc. No. 30 at 3.) The Court does not take issue with counsel's argument that the 25% fee ceiling must be calculated based on the past-due benefits awarded to both Plaintiff and his dependent family members. However, as noted above, counsel's requested hourly rate is well over twice the standard market rate and, therefore, the Court must consider whether the requested fee award represents a windfall. Plaintiff's counsel does not cite any law suggesting the Court cannot consider, as part of its windfall analysis, the fact that no additional work was performed before this Court on behalf of Plaintiff's ex-wife and minor children. To the contrary, several courts within this Circuit have found that this precise situation may properly be considered when

assessing whether a § 406(b) award constitutes a windfall. [6]

Based on the above, the Court finds the requested fee award of $6,741.37 constitutes a windfall. Instead, the Court finds that attorney fees in the amount of $4,211.26 are reasonable in this case. This figure is equivalent to:

- 5.1 hours of attorney Pettit's time multiplied by a doubled hourly rate of $353.90 (i.e., double the hourly rate of $176.95) for a total of $1,804.89 of attorney time; plus
- 13.4 hours of paralegal Sunderman's time multiplied by a doubled hourly rate of $179.58 (i.e., double the hourly rate of $89.79) for a total of $2,406.37 of paralegal time.

In addition, the Court finds this amount shall be deducted entirely from the funds withheld from Plaintiff Cortes' past-due benefits award. In light of the fact that counsel performed no additional work before this Court on behalf of Plaintiff's dependent family members, the Court directs that no portion of this award shall be deducted from the amounts withheld from Plaintiff's ex-wife and children.

Finally, although counsel may not generally retain both EAJA awards and an award under § 406(b), Plaintiff's counsel states she received no EAJA fee because the full $2,105.92 was offset to pay Plaintiff's pre-existing federal debt. (Doc. No. 27 at 4; Doc. No. 27-6.) Thus, Plaintiff's counsel argues she should not be required to refund the previous EAJA award. The Court agrees and finds that, because the entirety of counsel's previous EAJA award was used to offset Plaintiff's pre-existing federal debt, it need not be deducted from counsel's § 406(b) award herein. *See, e.g., Matthews v. Colvin*, 2013 WL 6230339 (E.D. Tenn., Dec. 2, 2013) (finding that

---

[6] Plaintiff's counsel's Motion for Attorney Fees failed to acknowledge or address the impact of Cortes' dependent family members past-due benefits awards on this Court's § 406(b) analysis. Indeed, Plaintiff's counsel did not direct this Court's attention to any law on this issue until expressly asked to do so. *See* Doc. No. 30. The Commissioner also failed to address this legal issue or, indeed, any of the problematic issues raised by counsel's § 406(b) fee request. The Court hopes that, in the future, counsel on both sides will present briefing that thoroughly addresses the issues raised by § 406(b) fee requests submitted to this Court for consideration.

because the plaintiff received the benefits of the EAJA award by the reduction of his federal debt while counsel received nothing, attorney was entitled to the entirety of fees under 406(b)); *Rhoads v. Comm'r of Soc. Sec.*, 2012 WL 3651077 (W.D. Mich., Aug. 5, 2012) (finding no refund or offset of the EAJA fees was required as those fees were paid directly to the plaintiff and not his attorney).

### IV. Conclusion

For the reasons set forth above, the Court denies Plaintiff's counsel's request for attorney fees in the amount of $6,741.37 from Plaintiff's and his family's past due benefits. Instead, the Court will award attorney fees in the amount of $4,211.26 and directs that this amount be deducted in its entirety from the funds withheld from Plaintiff Amos Cortes' past-due benefits award.

IT IS SO ORDERED.

s/ Greg White
United States Magistrate Judge

Dated: September 10, 2014